FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2016 MAR -9  P 12: 36

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| COMPUTER SCIENCES CORPORATION<br>3170 Fairview Park Drive<br>Falls Church, Virginia, 22042<br><br>Plaintiff,<br><br>v.<br><br>JOHN PAUL MAGUIRE,<br>305 Main Street<br>Ridgefield, Connecticut 06877<br><br>Defendant. | 1:16 CV261 |

# COMPLAINT

Computer Sciences Corporation ("CSC"), for its Complaint against John Maguire, alleges as follows:

## I. PARTIES, JURISDICTION AND VENUE

1. CSC is a corporation organized under the laws of Nevada with a principal place of business in Falls Church, Virginia.

2. Defendant John Paul Maguire ("Maguire") is a citizen of the State of Connecticut. Upon information and belief, Maguire resides at 305 Main Street, Ridgefield, Connecticut 06877.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Maguire is a citizen of a different state than CSC and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.  Pursuant to an Order dated November 18, 2015, the United States District Court for the District of Nevada found that all disputes arising under the agreements referenced below are properly addressed in the courts in Virginia.

5.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a).

## II. **FACTUAL BACKGROUND**

<u>CSC's Employment of Maguire</u>

6.  CSC is a global provider of information technology ("<u>IT</u>") and professional services and solutions to corporate customers. Since it was founded in 1959, CSC has helped its clients develop and integrate their IT assets in support of operational efficiency, new growth initiatives, and other business objectives.

7.  In April 2013, CSC hired Maguire as an Executive Vice President and General Manager of Global Sales and Regional Operations. In connection with his employment, and as an officer and high-ranking CSC employee, Maguire received compensation, which included a salary of $625,000.00, eligible bonuses of $625,000.00, and participation in CSC's incentive stock option program.

8.  Prior to accepting employment with CSC in 2013, Maguire was in direct communications with Cognizant Technology Solutions U.S. Corporation ("<u>Cognizant</u>") regarding potential employment. Maguire met (or spoke) directly with Frank D'Souza, Cognizant's CEO, prior to accepting employment with CSC. Two weeks after such discussions took place, Maguire ultimately chose to leave HP, his current employer, and join CSC.

9.  As Executive Vice President of Global Sales, Maguire was responsible for all sales activities of CSC on a global level. He enjoyed regular access to CSC's confidential and proprietary information; including information concerning virtually all of CSC's customers

(current and prospective), CSC's products, costs, pricing, sales processes and methodologies, global sales strategies, and the identities, skills, and aptitudes of CSC employees who were critical to CSC's global sales and sales support efforts. By his own admission, Maguire was responsible for executing end-to-end strategies to advance CSC's position in high-growth markets, expand major accounts and pursue new clients, capitalize on strategic alliances, and strengthen brand recognition.

<u>Maguire's Original Employment Agreement and Stock Option Award Agreements</u>.

10. As part of his employment with CSC, Maguire signed a Non-Competition, Non-Solicitation Agreement ("<u>Employment Agreement</u>"), dated April 19, 2013. A genuine and complete copy of the Employment Agreement is attached hereto as **Exhibit A**. Pursuant to the Employment Agreement, Maguire was prohibited from (a) disclosing or misusing CSC's confidential and proprietary information, (b) soliciting CSC's employees or customers for a defined period of time, and/or (c) competing against CSC for a defined period of time. Employment Agreement specifically lists Cognizant (among others) as a Competitor for which Maguire is prohibited from "directly or indirectly, as an employee, agent, contractor, consultant, member, partner, officer, director or stockholder, wherever CSC is marketing or providing its services or products, participat[ing] in any activity as, or for, a Competitor of CSC which is the same or similar to the activities in which Employee was involved at CSC."

11. As part of his Employment Agreement, Maguire acknowledged that he "has carefully read and considered the [above-referenced restrictions] and agrees that [such provisions] are fair and reasonable, are supported by valid consideration, and are reasonably required to protect legitimate business interests of CSC." Exhibit A, ¶ 3.

12. Through the Employment Agreement, Maguire acknowledged that if he breached or threatened to breach his non-disclosure, non-solicitation, and/or non-competition obligations, CSC would suffer immediate and irreparable harm such that CSC would be entitled to (and Maguire specifically stipulated to the entry of) injunctive relief prohibiting Maguire from further breaching such obligations.

13. Separate and apart from Maguire's Employment Agreement, and in connection with his participation in CSC's incentive stock option program, Maguire entered into five (5) separate stock option award agreements with CSC (collectively, "Stock Option Awards"). Genuine and complete copies of the Stock Option Awards are attached hereto, collectively, as **Exhibit B**. Each of the Stock Option Awards contained a recoupment and forfeiture provision, through which Maguire is required to return to CSC the value of gains realized on exercised options, and to forfeit unexercised options, in the event that Maguire (i) misuses or discloses CSC's confidential information; (ii) solicits CSC employees or clients; or (iii) competes against CSC in violation of his contractual obligations.

Events Following Maguire's Departure from CSC

14. Maguire left CSC's employ on October 24, 2014. Thereafter, Maguire approached CSC to revise certain of his ongoing obligations with CSC. Maguire negotiated an agreement with CSC's general counsel, resulting in a letter agreement dated November 13, 2014, ("Letter Agreement No. 1"), through which CSC agreed to adjust certain of the non-solicitation and non-competition provisions contained in Maguire's Employment Agreement. A genuine and complete copy of Letter Agreement No. 1 is attached hereto as **Exhibit C**. In Letter Agreement No. 1, CSC and Maguire agreed that:

(i) For six months after his Separation Date, Maguire would not in any capacity (directly or indirectly) "associate with the following entities...[including] Cognizant...without written permission of CSC" [until April 24, 2015];

(ii) For a period of twelve (12) months, Maguire would not hire, attempt to hire, or "assist any other person or entity in hiring or attempting to hire, any current employee of CSC or any person who was a CSC employee within the 6-month period preceding such hiring or attempted hiring";

(iii) For a period of twelve (12) months, Maguire would not solicit or assist in the solicitation of certain named CSC clients; and

(iv) Maguire's obligation to protect and not misuse or disclose CSC's confidential information would remain in effect as stated in his Employment Agreement.

15. Two (2) months later, in January 2015, Maguire approached CSC seeking yet additional modifications to his Employment Agreement and Letter Agreement No. 1. This time, Maguire sought CSC's consent so that he could accept employment with Cognizant – one of the listed employers/competitors from which Maguire was expressly prohibited from under the terms of both his Employment Agreement and Letter Agreement No. 1.

16. On January 19, 2015, CSC provided its consent for Maguire to accept employment with Cognizant in Letter Agreement No. 2. In Letter Agreement No. 2, Maguire affirmed that Letter Agreement No. 1 would otherwise "continue in full force and effect on the terms and conditions stated therein." A genuine and complete copy of Letter Agreement No. 2 is attached hereto as **Exhibit D**. In Letter Agreement No. 2, Maguire also "agree[d] that until April 24, 2015, you will not personally be involved in sales efforts or direct sales strategy on bids/proposals in which CSC is competing."

17. Maguire then joined Cognizant as its Senior Vice President of Sales. In this position, Maguire is responsible for Cognizant's overall sales efforts, and in that regard, works in a directly competitive position to the position he held at CSC. In the relevant arena, Cognizant competes for the same customers, and same business, as CSC. Maguire's detailed knowledge of CSC's confidential and proprietary information—including information concerning CSC's customers (current and prospective), CSC's products, costs, pricing, sales processes and methodologies, global sales strategies, and the identities, skills, and aptitudes of CSC employees who were and are critical to CSC's global sales and sales support efforts—is of immeasurable competitive value and will cause irreparable harm to CSC if used by Maguire in connection with his role as head of sales for Cognizant.

Maguire's Involvement with Cognizant

18. Cognizant began communicating with Maguire as early as October 1, 2014, via Michael DeSimone ("DeSimone") of CT Partners, a recruiting firm utilized by Cognizant, while he was still a CSC employee. Ten days prior to resigning from CSC, Maguire communicated with DeSimone to coordinate a meeting in Texas for October 29, 2014 with Raj Mehta—the CEO of IT Services with Cognizant. Mr. Mehta ultimately would become Maguire's boss.

19. Even after leaving CSC's employ, Maguire was still bound by his agreements with CSC. Yet Maguire, with Cognizant's awareness, approval and participation, sought to secure employment with Cognizant. Maguire interacted with and negotiated with a number of high ranking Cognizant representatives through his hiring process with Cognizant, including Frank D'Souza ("D'Souza"), Cognizant's CEO. Cognizant began internally negotiating and drafting Maguire's employment contract, stock options, and compensation package as early as October 24, 2014.

20. On November 5, 2014, Cognizant issued its first offer letter to Maguire. With that Cognizant offer in hand, Maguire nonetheless signed Letter Agreement No. 1 with CSC on November 13, 2014, specifically promising not to accept employment with Cognizant. On November 14th, only one day after he signed Letter Agreement No. 1 with CSC, Maguire was in direct communication with Cognizant with regard to his employment.

21. Cognizant admitted in emails that hiring Maguire away from CSC must be "handled carefully." By December 4, 2014, Maguire had verbally accepted the position with Cognizant but was holding off for "key reasons" and to clear the background check before "taking further steps." At this time, Maguire was still obligated by his Employment Agreement and Letter Agreement No. 1 not to accept employment with Cognizant without written permission from CSC's CEO.

22. On December 13, 2014, after further lengthy discussions about the details of his employment with Cognizant, Maguire met with CSC to discuss his future employment with Cognizant. Immediately after this meeting, Maguire reached out directly to Frank D'Souza and Raj Mehta to relay his discussions with CSC. Not long thereafter, D'Souza asked Maguire to meet with him personally to finalize the deal.

23. On January 16, 2015, Maguire signed Cognizant's offer letter and accepted a role as Senior Vice President of Sales. Maguire signed the offer letter while still bound by the terms of Letter Agreement No. 2. As of January 16, 2015, Maguire had not obtained permission from CSC to accept employment with Cognizant. It was not until January 19, 2015, that Maguire received the requisite written release, subject to certain limitations, to work for Cognizant via Letter Agreement No. 2.

24. In Letter Agreement No. 2, Maguire expressly promised that, through April 24, 2015, he "would not personally be involved in sales efforts or direct sales strategies on bids/proposals on which CSC is competing."

25. Maguire's first "official" day working for Cognizant was February 9, 2015. As Senior Vice President of Sales, Maguire was directly involved in Cognizant's sales efforts and sales strategies. Upon information and belief, Maguire, by the sheer expansiveness and high level of his position with Cognizant, participated in sales efforts and/or direct sales strategies on deals on which CSC was competing.

Maguire's Solicitation of Eddie Woods

26. On or about April 6, 2009, Eddie Woods ("Woods") joined CSC as a Business Development Executive. Woods rose through the ranks at CSC, ultimately achieving the title of Head of Application and Consulting Sales for the UK, Ireland, and Netherlands. Prior to his departure from CSC, Maguire headed the sales organization in which Woods worked.

27. In his role at CSC, Woods was a significant member of CSC's sales organization and enjoyed regular access to CSC's confidential and proprietary information, including information concerning CSC's products, services, pricing, and sales strategies.

28. On April 18, 2015, shortly after Maguire commenced his employment with Cognizant, Woods resigned from CSC and joined Cognizant as an Assistant Vice President and Strategic Pursuit Lead. Woods resigned from CSC to join Maguire at Cognizant only days after CSC incurred significant costs to repatriate Woods to the United States.

29. In Woods' new role with Cognizant, he is again working for Maguire. Upon information and belief, Maguire solicited or participated in the solicitation of Woods, including through the use of CSC's confidential and proprietary information.

### Maguire's Unlawful Use of CSC's Confidential and Proprietary Information

30. In addition to Maguire's unlawful use of CSC's confidential and proprietary information to recruit Woods, and potentially others, upon information and belief, Cognizant, Maguire and Woods have used and disclosed, and continue to use and disclose, CSC's confidential and proprietary information, in violation of their agreements and applicable law.

31. CSC will suffer immediate and irreparable harm unless Maguire is not restrained and enjoined from (i) any further unauthorized use of CSC's confidential and proprietary information; (ii) any further attempts to improperly solicit CSC's employees and/or customers; and (iii) any further attempts to tortuously interfere with.

## COUNT ONE
### (Breach of Contract)

32. CSC repeats and re-alleges the allegations set forth in paragraphs 1 through 31 of this Complaint as though set forth fully herein.

33. The Employment Agreement, Stock Option Award Agreements, and Letter Agreements are each valid, binding, and enforceable contracts between CSC and Maguire.

34. CSC performed all of its obligations under the Employment Agreement, Stock Option Award Agreements, and Letter Agreements, or was excused from such performance.

35. Upon information and belief, Maguire has materially breached his Employment Agreement, Stock Option Award Agreements, and Letter Agreements by disclosing and using CSC's confidential and proprietary information to and for the benefit of Cognizant. Maguire further breached his agreements by soliciting CSC employees to come to work for Cognizant, in violation of his obligations not to solicit CSC employees.

36. Maguire has further breached the Stock Option Award Agreements through his failure and refusal to return (after he breached his obligations under the Employment Agreement

and Letter Agreement No. 1, solicited CSC employees, and misused CSC confidential information) gains that he realized on the exercise of CSC options.

37. As a direct and proximate result of Maguire's breaches of the Employment Agreement, Stock Option Award Agreements, and Letter Agreements, CSC has suffered, and will continue to suffer, immediate and irreparable injury, for which CSC has no adequate remedy at law, and for which CSC is entitled to preliminary and permanent injunctive relief.

38. As a direct and proximate result of Maguire's breaches of his Employment Agreement, Stock Option Award Agreements, and Letter Agreements, CSC has suffered damages, in excess of $75,000.00, in an amount to be proven at trial.

39. As a direct and proximate result of Maguire's breaches of his Employment Agreement, Stock Option Award Agreement, and Letter Agreements, CSC has incurred costs and attorneys' fees.

### Count Two
### (Breach of Fiduciary Duty)

40. Plaintiff repeats and re-alleges the allegations contained in Paragraph 1 through 39 of this Complaint as though set forth fully herein.

41. As an officer and high-ranking employee of CSC, Maguire owed fiduciary duties to CSC, including the duty of loyalty and the duty of care.

42. Upon information and belief, Maguire breached his fiduciary duties to CSC by taking or retaining CSC's confidential and proprietary information with him upon leaving CSC's employment, whether in physical form or otherwise, and using that information to Cognizant's benefit.

43. As a direct and proximate result of Maguire's breaches of fiduciary duties, CSC has suffered, and will continue to suffer, immediate and irreparable injury, for which CSC has no

and Letter Agreement No. 1, solicited CSC employees, and misused CSC confidential information) gains that he realized on the exercise of CSC options.

37. As a direct and proximate result of Maguire's breaches of the Employment Agreement, Stock Option Award Agreements, and Letter Agreements, CSC has suffered, and will continue to suffer, immediate and irreparable injury, for which CSC has no adequate remedy at law, and for which CSC is entitled to preliminary and permanent injunctive relief.

38. As a direct and proximate result of Maguire's breaches of his Employment Agreement, Stock Option Award Agreements, and Letter Agreements, CSC has suffered damages, in excess of $75,000.00, in an amount to be proven at trial.

39. As a direct and proximate result of Maguire's breaches of his Employment Agreement, Stock Option Award Agreement, and Letter Agreements, CSC has incurred costs and attorneys' fees.

### Count Two
### (Breach of Fiduciary Duty)

40. Plaintiff repeats and re-alleges the allegations contained in Paragraph 1 through 39 of this Complaint as though set forth fully herein.

41. As an officer and high-ranking employee of CSC, Maguire owed fiduciary duties to CSC, including the duty of loyalty and the duty of care.

42. Upon information and belief, Maguire breached his fiduciary duties to CSC by taking or retaining CSC's confidential and proprietary information with him upon leaving CSC's employment, whether in physical form or otherwise, and using that information to Cognizant's benefit.

43. As a direct and proximate result of Maguire's breaches of fiduciary duties, CSC has suffered, and will continue to suffer, immediate and irreparable injury, for which CSC has no

adequate remedy at law, and for which CSC is entitled to preliminary and permanent injunctive relief.

44. As a direct and proximate cause of the breaches of fiduciary duties, CSC has suffered damages in excess of $75,000.00, in an amount to be proven at trial.

45. Maguire's breaches of fiduciary duty were committed with malice and wantonness. As a result, CSC is entitled to recover punitive damages from Maguire in an amount to be determined at trial.

## JURY TRIAL DEMANDED

CSC demands a jury trial on all issues triable before a jury.

## PRAYER FOR RELIEF

WHEREFORE, Computer Sciences Corporation prays that the Court enter a judgment in favor of Computer Sciences Corporation and against John Maguire granting the following relief:

1. Preliminary and permanent injunctive relief as follows:

   a. Requiring John Maguire, and all others acting in concert with him, to return all of CSC's confidential and proprietary information to CSC in forensically sound fashion, preserving all pertinent metadata;

   b. Enjoining John Maguire, and all others acting in concert with him, from using, copying, uploading, downloading, transmitting, transferring, or disclosing any confidential information of CSC;

   c. Enjoining John Maguire, and all others acting in concert with him, from directly or indirectly soliciting CSC employees;

d.  Enjoining John Maguire, and all others acting in concert with him, from directly or indirectly tortuously interfering with CSC's agreements with its current and/or former employees; and

e.  Enjoining John Maguire from working in any capacity for Cognizant that would lead to actual or threatened disclosure of use of CSC's confidential or proprietary information for a reasonable period of time, but no less than one year.

2.  The return of the value of gains realized by Maguire on exercised CSC stock options (currently valued at $627,600.00);

3.  Refund of any and all consideration paid to Maguire under the Letter Agreement(s);

4.  Refund of any and all costs associated with the repatriation of Eddie Woods;

5.  Plaintiff's actual damages established at trial, plus any incidental or consequential damages, and disgorgement of any amounts earned by Maguire as a result of the use of CSC's confidential and proprietary information;

6.  Exemplary and punitive damages in an amount to be determined by the jury;

7.  Pre-judgment and post-judgment interest;

8.  Attorneys' fees;

9.  All costs of Court incurred herein; and

10. Such other and further relief, general or special, at law or in equity, to which CSC may be justly entitled.

Respectfully submitted,

_____
J. David Folds, VSB No. 44068
Baker Donelson Bearman

Caldwell & Berkowitz PC
901 K Street NW
Washington, D.C. 20001
Telephone: (202) 508-3400
Facsimile: (202) 220-2241
dfolds@bakerdonelson.com

and

Steve Sumner, Texas Bar No. 19508500
E-Mail: ssumner@sumnerschick.com
David Schick, Texas Bar No. 17745700
E-Mail: dschick@sumnerschick.com
Gayle A. Boone, Texas Bar No. 02628500
E-Mail: gboone@sumnerschick.com

Sumner, Schick, & Pace, LLP
3811 Turtle Creek Boulevard, Suite 600
Dallas, Texas 75219
(214) 965-9229 Telephone
(214) 965-9215 Facsimile

Attorneys for Computer Sciences Corporation