IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

COMPUTER SCIENCES CORP.,            )
                                    )
        Plaintiff,                  )
                                    )
            v.                      )    1:16-CV-261 (JCC/IDD)
                                    )
JOHN PAUL MAGUIRE,                  )
                                    )
        Defendant.                  )

**<u>M E M O R A N D U M   O P I N I O N</u>**

This matter is before the Court on Plaintiff Computer
Sciences Corporation's ("Plaintiff" or "CSC") Omnibus Motion *in
Limine* [Dkt. 113] and Defendant John Paul Maguire's ("Defendant"
or "Maguire") Motions *in Limine* [Dkt. 116].  Both motions ask
this Court to exclude a variety of testimony and evidence.  For
the following reasons, the Court will rule on the various
motions as follows.

## I.  Background

### A.   <u>Factual Background</u>

The factual background of this case is recited in
detail in the Court's November 22, 2016, Memorandum Opinion and
Order denying Defendant's motion for summary judgment.  [Dkt.
110.]  Familiarity with that Memorandum Opinion and Order are
presumed.

To summarize, this case concerns CSC's claims for breach of contract and fraud against its former executive, John Paul Maguire, regarding events surrounding his resignation from CSC in October 2014.  CSC asserts that Maguire defrauded CSC when he negotiated a severance package with CSC that prohibited him from associating with a competitor, Cognizant Technology Solutions (U.S.) ("Cognizant"), even though he was already engaging in detailed discussions with Cognizant to accept a new position there.  CSC also asserts that Maguire breached his non-solicitation and Stock Option Award Agreements (hereinafter, the "Employment Agreements") with CSC by attempting to recruit former CSC employees to work at Cognizant.

B.   Procedural Background

Plaintiff filed the instant lawsuit on March 9, 2016. [Dkt. 1.]  On October 19, 2016, Defendant filed a notice of removal to federal court.  [Dkt. 1.]  On November 23, 2016, Plaintiff filed its omnibus motion *in limine*.  [Dkt. 113.]  On November 25, 2016, Defendant filed his motions *in limine.*  [Dkt. 116.]  Oral argument was held on December 6, 2016.  These motions are now ripe for disposition.

## II. Standard of Review

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence.  *Luce v. United*

2

*States*, 469 U.S. 38, 40 n.2 (1984).  A court's ruling regarding a motion *in limine* is "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]."  *Luce*, 469 U.S. at 41.  Such evidentiary rulings "are entitled to substantial deference and will not be reversed absent a clear abuse of discretion."  *United States v. Moore*, 27 F.3d 969, 974 (4th Cir. 1994); *see also United States v. Perkins*, 470 F.3d 150, 155 (4th Cir. 2006).  "[The Court of Appeals] will find that discretion to have been abused only when the district court acted 'arbitrarily or irrationally.'" *Id.* (quoting *United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993)).

As a general matter, all relevant evidence is admissible unless there are constitutional, statutory, or rule-based exceptions preventing its admission.  *See* Fed. R. Evid. 402. Rule 401 of the Federal Rules of Evidence defines "relevant" evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Consequently, what constitutes "relevant evidence" depends on the facts of the case, the nature of the claims, and the associated defenses to the claims.

One reason that relevant evidence may be excluded at trial is because of its prejudicial effect.  *See* Fed. R. Evid. 403.  Rule 403 of the Federal Rules of Evidence states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.*

### III. Analysis

#### A.   Plaintiff's Omnibus Motion *in Limine*

Plaintiff has made a series of motions *in limine* to exclude a wide range of evidence and testimony.  The Court addresses each of these motions in turn.  As a threshold matter, as a result of this Court's summary judgment rulings, only Claim I of breach of contract and Claim III of fraud remain against Defendant Maguire.

> 1. *Motion* in Limine *to Exclude Evidence Involving Oral Conversations between Maguire and Two CSC Employees*

Plaintiff asserts that Defendant should be precluded from testifying regarding alleged oral modifications of his Employment Agreements.  (Pl. Mem. in Supp. at 3.)  Plaintiff argues that the Non-Competition/Non-Solicitation Agreement signed by Defendant on April 19, 2013 specifically provides that modifications or amendments must be made in writing.  (*Id.*)

This Agreement states: "¶ **9. Amendment.** This Agreement may not be modified or amended except by a written instrument executed by Employee and CSC's General Counsel." (CSC Trial Ex. 4, ¶ 9.) Similarly, each of the five stock option agreements contain the following provision:

> **Entire Agreement; Amendment and Waivers.** This Agreement embodies the entire understanding and agreement of the parties with respect to the subject matter hereof, and no promise, condition, representation or warranty, express or implied, not stated or incorporated by reference herein, shall bind either party hereto.  None of the terms and conditions of this Agreement may be amended, modified, waived or canceled except by a writing signed by the parties hereto specifying such amendment, modification, waiver, or cancellation.  A waiver by either party at any time of compliance with any of the terms and conditions of the Agreement shall not be considered a modification, cancellation or consent to a future waiver of such terms and conditions or of any preceding or succeeding breach thereof, unless expressly stated so.

(CSC Trial Ex. 6, ¶ 14); (CSC Trial Ex. 7, ¶ 18); (CSC Trial Ex. 8, ¶ 14); (CSC Trial Ex. 9, ¶ 16); (CSC Trial Ex. 10, ¶ 18).  Because any modifications must be made in writing, Plaintiff argues that any alleged conversations between Defendant and CSC employees that relate to his contractual obligations would only serve to confuse the jury and would be unfairly prejudicial to CSC.  (Pl. Mem. in Supp. at 4.)

Defendant responds to Plaintiff's arguments by clarifying that the conversations he had with Mike Lawrie, CSC's chief executive officer, and Paul Saleh, CSC's chief financial officer, should be permitted at trial because they "go to the heart of [Plaintiff's] fraud claim." (Def. Mem. in Opp. at 4.) Such conversations are not meant to show a modification of any contractual terms, but rather are meant to show Lawrie's, and therefore the Plaintiff's, state of mind. (*Id.*) Moreover, Maguire plans to offer evidence of his conversation with Mr. Saleh as evidence of his affirmative defense of waiver, as he alleges that Mr. Saleh explicitly asked him to violate the terms of his non-solicitation agreement. (*Id.*)

Given the purposes for which these oral conversations will be offered, the Court finds them relevant to the proceedings and denies Plaintiff's motion to exclude them.

> 2. *Motion* in Limine *to Preclude Defendant From Asserting the Unenforceability of the Non-Solicitation Provisions as an Affirmative Defense*

Plaintiff has also moved to preclude Defendant from asserting the affirmative defense that the non-solicitation provisions are unenforceable. (Pl. Mem. in Supp. at 4.) Plaintiff argues that Defendant asserted this defense for the

first time in his Reply Brief in Support of Motion for Summary
Judgment [Dkt. 94], filed on October 6, 2016, after the close of
discovery and the final pretrial conference.  (*Id.*)  Plaintiff
claims that Defendant should have raised this affirmative
defense sooner, via his Answer, discovery responses, or motion
for summary judgment.  (*Id.*)  Furthermore, Plaintiff alleges
that to permit such a defense would be "unfairly prejudicial"
because CSC did not have a chance to conduct discovery.  (*Id.*)

Defendant responds to this argument by pointing out
that his Answer explicitly "denies that the non-competition
agreement, stock option agreements, and separation agreement are
valid, binding, and enforceable contracts."  (Def. Mem. in Opp.
at 5.)  Defendant also argues that Federal Rule of Civil
Procedure 8(c) does not require Maguire to plead general
unenforceability as an affirmative defense.  (*Id.*)

Federal Rule of Civil Procedure 8(c) requires that all
"avoidance or affirmative defense[s]" be affirmatively pled in
the answer.  Fed. R. Civ. P. 8(c).  The Fourth Circuit has
previously defined these defenses as "the defendant's assertion
raising new facts and arguments that, if true, will defeat the
plaintiff's . . . claim, even if all allegations in the
complaint are true."  *Bryant Real Estate, Inc. v. Toll Brothers,
Inc.*, 106 Fed. Appx. 182, 185 (4th Cir. 2004).  "Generally
speaking, affirmative defenses share the common characteristic

of a bar to the right of recovery even if the general complaint were more or less admitted to." *Id.* (internal citation omitted). Defendant is correct that neither the Virginia state courts nor the Fourth Circuit have addressed whether unenforceability is an affirmative defense that must be raised in the pleadings.

Even assuming that unenforceability must be pled as an affirmative defense, "it is well established that [such a] defense is not waived absent unfair surprise or prejudice." *Grunley Walsh U.S., LLC v. Raap*, 385 Fed. Appx. 455, 459 (4th Cir. 2010) (internal citations and quotations omitted). "This is because 'the Supreme Court has held that the purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it.'" *Id.* (citing *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993)). "Thus, if a plaintiff receives notice of an affirmative defense by some means other than pleadings, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice." *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797 (11th Cir. 1989) (internal quotation and citation omitted). Moreover, "courts have found that affirmative defenses raised for the first time in summary judgment motions may provide the required notice." *Raap*, 385 Fed. Appx. at 459 (internal citation omitted).

In the instant case, Defendant denied Plaintiff's allegations that the Employment Agreements were valid, binding, and enforceable contracts as early as June 2016.  (Answer to First Amended Compl. ("Answer"), ¶ 41.)  However, Defendant failed to mention the unenforceability defense specifically until he filed his Reply Brief in Support of Motion for Summary Judgment.  [Dkt. 94.]  As a result, this Court did not consider the general enforceability of the Employment Agreements in its Order Denying the Motion for Summary Judgment.  [Dkt. 110 at 6 n.2.]

Due to Defendant's tardiness, Maguire deprived Plaintiff of the opportunity to fully brief the issue during dipositive pre-trial motions.  As a result, Defendant has waived the right to assert unenforceability of the non-solicitation provision as an affirmative defense.  Accordingly, Plaintiff's motion is granted.

   3.  *Motion* in Limine *to Preclude Defendant From Asserting the Unenforceability of the Liquidated Damages Provisions in Maguire's Stock Option Agreements*

Plaintiff asserts a second argument regarding Defendant's potential unenforceability defenses.  This time, Plaintiff claims that Maguire has waived his right to present the affirmative defense that the liquidated damages provisions in his stock option agreements are an unenforceable penalty

because he failed to assert them in his Answer, deposition
testimony, or summary judgment motion.  (Pl. Mem. in Supp. at
6.)  Instead, Defendant asserted them in his Reply Brief in
Support of Motion for Summary Judgment.  [Dkt. 94, at 16.]
Plaintiff further argues that "[t]he failure to assert [that] a
liquidated damages provision is an unenforceable penalty as an
affirmative defense . . . constitutes a waiver under Virginia
law."  (Pl. Mem. in Supp. at 6.)

Defendant argues that he denied that the stock option
agreements were valid, binding, and enforceable contracts in his
Answer, which necessarily included denying that the liquidated
damages provision in those agreements was also enforceable.
(Def. Mem. in Opp. at 6.)  In addition, Defendant claims that
Federal Rule of Civil Procedure 8(c) does not require him to
plead unenforceability generally, or liquidated damages as a
penalty specifically, as an affirmative defense.  (*Id.*)  Even if
he were required to raise such a defense, Defendant argues that
he did so during summary judgment and that, in any event, CSC
failed to provide him with calculations on its liquidated
damages until July 8, 2016, a full two weeks after Defendant's
Answer was due.  (*Id.* at 7.)

To justify excluding Defendant's argument, Plaintiff
cites a single Virginia state court case for the following
proposition: the defense that a provision for liquidated damages

10

is an unenforceable penalty must be pled specially or it is waived.  *See Palace Laundry v. Country Club of Fairfax*, No. 96203, 1992 WL 884601, at *2 (Va. Cir. Ct. Mar. 24, 1992) (citing 22 Am. Jur.2d "Damages" 840).  While the court's opinion does state the proposition that Plaintiff cites, CSC fails to recognize that the source the court cited for this proposition has absolutely nothing to say on the matter.  As a result, the Court finds the case unpersuasive.

Finding no other case law regarding whether liquidated damages as an unenforceable penalty must be pled as an affirmative defense, the Court focuses its analysis instead on applying the proposition from *Raap*: "[A]n affirmative defense is not waived absent unfair surprise or prejudice."  *Id.,* 385 Fed. Appx. at 459.  Here, Defendant denied in his Answer that the stock options agreements were unenforceable generally.  This necessarily includes the argument that the liquidated damages provisions within in those agreements were also unenforceable. However, Defendant waited too long to raise this argument, mentioning it for the first time in his Reply Brief during his Motion for Summary Judgment.  Plaintiffs would be unfairly prejudiced if the Court considered the argument at this time. Thus, the Court grants Plaintiff's motion.

> 4. *Motion* in Limine *to Exclude* t*he Deposition Testimony of Raj Mehta*

Plaintiff argues that Defendant plans to introduce deposition testimony from Raj Mehta, a Cognizant executive, at trial. (Pl. Mem. in Supp. at 6.)  Defendant denies this.  (Def. Mem. in Opp. at 7.)  Accordingly, this Court denies Plaintiff's motion as moot.

### 5. *Motion* in Limine *to Exclude Testimony Regarding Whether Defendant Received the November 5, 2014 Offer Letter*

Plaintiff next argues that Defendant should be prohibited from claiming that he never received Cognizant's first offer letter—issued on November 5, 2014—because he admitted receiving it in his Answer.  (Pl. Mem. in Supp. at 7.) Defendant clarifies that his Answer merely admitted that Cognizant "issued its first offer letter to him" on that date. (Def. Mem. in Opp. at 8 (citing Answer, ¶ 18).)  However, in the same section of his Answer, Defendant also denied that he had the November 5 "Cognizant offer in hand."  (*Id.* (citing Answer, ¶ 18).)  Defendant appears to be arguing that the two taken together imply that he denied ever having received the offer letter.  Moreover, during Defendant's deposition, CSC's counsel "never even asked whether he received the document," but rather focused only on his knowledge of its contents.  (*Id.* (citing Maguire Tr. [Dkt. 94-1] at 216:25-218:22).)  Finally, Defendant claims that even if this testimony did not put CSC on notice, his summary judgment reply brief did, wherein he argued that the

November 5 letter was an internal Cognizant document only that
he had never received. (*Id.* (citing Reply Brief at 5-6).)

The Court disagrees with Plaintiff that Defendant
admitted that he received the November 5 offer letter in his
Answer.  The quoted language above makes clear that he only
admitted that an offer letter had been issued on a particular
date.  It says nothing about when, if ever, he received it.  As
a result, the Court denies Plaintiff's motion.

6. *Motion* in Limine *to Exclude Defendant's Motion
and Threatened Motion for Rule 11 Sanctions*

Plaintiff argues that Defendant plans to introduce
evidence of his Motion and threatened Motion for Rule 11
Sanctions.  (Pl. Mem. in Supp. at 8.)  Defendant denies this.
(Def. Mem. in Opp. at 9.)  Accordingly, this Court denies
Plaintiff's motion as moot.

7. *Motion* in Limine *to Exclude Other Lawsuits*

Plaintiff's final argument is that Defendant plans to
introduce other currently pending lawsuits between Defendant,
Cognizant, and CSC.  (Pl. Mem. in Supp. at 8.)  Defendant denies
this.  (Def. Mem. in Opp. at 9.)  Accordingly, this Court denies
Plaintiff's motion as moot.

**B.**   **Defendant's Motions *in Limine***

Defendant has also made three motions *in limine* to exclude
evidence and testimony at trial.  The Court addresses each of

these motions in turn.  As noted above, as a result of this Court's summary judgment rulings, only Claim I of breach of contract and Claim III of fraud remain against Defendant Maguire.

### 1. *Motion* in Limine *to Exclude Non-Solicitation Evidence and Evidence Related to Bill Hutton*

#### a.   Non-Solicitation Evidence

Defendant argues that "CSC's non-solicitation agreement is facially overbroad and unenforceable under Virginia law." (Def. Mem. in Supp. at 1.)  Defendant claims that his "Separation Agreement with CSC, which references the provision in his original Non-Competition Agreement, restricts him from 'hir[ing], attempt[ing] to hire, or assist[ing] any other person or entity in hiring or attempting to hire any current employee of CSC or any person who was a CSC employee within the 6-month period preceding such hiring or attempted hiring.'" (*See* Non-Competition/Non-Solicitation Agreement [Dkt. 1-1], § III(2)(a); Separation Agreement [Dkt. 1-3], § 9.)  Such an agreement, which "applies to all current or former employees, throughout the world, regardless of whether the two employees had even met, and regardless of the position for which the employee is solicited, is facially overbroad and unenforceable." (*Id.*)

Plaintiff responds to Defendant's arguments by asserting that the unenforceability of the non-solicitation

provision was "implicitly rejected" by this Court at summary judgment, that the argument was not raised in a timely fashion as an affirmative defense, and that the provision is valid and enforceable under Virginia law.  (Pl. Mem. in Opp. at 3-4.)

As a preliminary matter, this Court's Order Denying Summary Judgment did not reject Defendant's argument, implicitly or otherwise, as Plaintiff claims.  [Dkt. 110.]  In fact, the Court declined to address it altogether.  [*See id.* at 6 n.2.] As to whether this defense was timely raised, the Court again finds that because Defendant's failed to assert the argument in his Motion for Summary Judgment, it has been waived.  As a result, the Court declines to reach the merits of the provision's enforceability under Virginia law.  For the foregoing reasons, the Court denies Defendant's motion to exclude all testimony regarding Maguire's alleged solicitation of any individuals.

### b. Bill Hutton Allegations

In the alternative, Defendant argues that CSC should not be permitted to introduce evidence regarding his alleged solicitation of Bill Hutton ("Hutton").  (Def. Mem. in Supp. at 4.)  Defendant claims that CSC's Amended Complaint contained no factual allegations about Hutton.  (*Id.*)  In fact, CSC did not introduce such allegations until it filed its Memorandum in Opposition at summary judgment on October 3, 2016.  (*Id.* at 5.)

Defendant maintains that allowing such evidence would be prejudicial because he had no notice of the Hutton claim and believed that Hutton was being deposed only as to his knowledge of Defendant's alleged solicitation of Eddie Woods. (*Id.* at 5-6.)  Plaintiff responds that Defendant should have been put on notice by its Amended Complaint, the document production related to discovery, and the depositions.  (Pl. Mem. in Opp. at 6.)  In making this argument, however, Plaintiff provides few, if any, citations.

The Court ultimately grants Defendant's motion to exclude any evidence regarding Defendant's alleged solicitation of Hutton.  Despite Plaintiff's assertions to the contrary, CSC's Amended Complaint contains no factual allegations whatsoever regarding Hutton.  Plaintiff did not introduce these allegations until it filed its opposition to summary judgment. To allow these claims to go forward now would be improper.  *See McKelvy v. Capital One Servs., LLC*, 2010 WL 3418228, at *5 n.7 (E.D. Va. Aug. 20, 2010).  Thus, the Court bars this evidence.

### 2. Motion *in* Limine *to Exclude Certain Damages Evidence*

Defendant next argues that the merger clause in the Separation Agreement "extinguishes CSC's right to claw back the value of the exercised options under the stock option agreements." (Def. Mem. in Supp. at 9.)  Alternatively,

Defendant argues that the liquidated damages provision in the stock option agreements are unenforceable penalties. (*Id.* at 10.)  To support this assertion, Defendant states that Plaintiff has not claimed any actual damages for his alleged solicitation of Woods and Hutton and that the parties did not fix an amount of damages at the time of contracting. (*Id.* at 11.)  Moreover, he did not waive this argument by failing to raise it in his pleadings. (*Id.* at 11-12.)

Plaintiff argues that Defendant waived the affirmative defense of liquidated damages as unenforceable penalties. (Pl. Mem. in Opp. at 9.)  In addition, Plaintiff claims that the Separation Agreement does not supersede all other prior written agreements between the parties. (*Id.* at 10.)  Plaintiff also argues that the recoupment and forfeiture provisions in the stock option agreements are enforceable under Virginia law because actual damages were difficult to determine when the agreements were signed as well as because the amount fixed is not disproportionate to the probable loss suffered. (*Id.* at 12.)

Defendant responds to Plaintiff's arguments by asserting that these issues are precluded from further litigation.  Defendant points out that Plaintiff already sued Defendant on the exact same claims in May 2015.  *See CSC v. Cognizant et al.*, No. 3:15-cv-00267 (D. Nev.).  Defendant filed

a motion to dismiss in that case based upon the merger clause in
the Separation Agreement that provided that the Agreement
superseded all other prior written agreements between the
parties and, therefore, required jurisdiction in Virginia.  *Id.*
(motion to dismiss).  The Court held that "[t]he subject matter
of the [Separation Agreement] was the resolution of 'all issues
and obligations that exist or may exist between [CSC and
Maguire] concerning [Maguire's] employment and termination.'"
*Id.* at 4-5 (order).  Furthermore, the Court held that "[a]ll of
CSC's claims – those based on the non-solicitation/non-
competition agreements, those based on the stock option award
agreements, and those arising purely in tort – relate to
Maguire's employment and termination and thus arise out of or
relate to the [Separation Agreement]."  *Id.*  For that reason,
the Nevada Court applied the forum selection clause in the
Separation Agreement and transferred the case to Virginia.  *Id.*
Defendant asserts that CSC's arguments today involve the same
issues and the same facts as those already heard and decided by
the Nevada court.

Res judicata can encompass both issue preclusion,
commonly referred to as collateral estoppel, as well as claim
preclusion.  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  The
latter forecloses "successive litigation of the very same claim,
whether or not relitigation of the claim raises the same issues

18

as the earlier suit." *Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).  Issue preclusion, in contrast, "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Id.* (citing *New Hampshire*, 532 U.S. at 748-49).  "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' these two doctrines protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id.* (citing *Montana v. United States*, 440 U.S. 147, 153-54 (1979)).  Here, because the original suit between the parties was based upon diversity jurisdiction and was filed in Nevada, Nevada state law controls. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).

The facts of this case satisfy the doctrine of issue preclusion.  The Nevada District Court's ruling on the motion to dismiss was unquestionably on the merits and resulted in the transfer of that case to the Eastern District of Virginia. Plaintiff did not appeal that order, choosing instead to voluntarily dismiss the case shortly after it arrived here.

Plaintiff then refiled the instant case against Maguire three months later.

Having fully litigated the issue of whether the Separation Agreement supersedes all prior written agreements – including the stock option agreements — between the parties, Plaintiff cannot now assert that the stock option agreements control the question of damages.  Accordingly, the Court grants Defendant's motion to exclude any evidence or testimony about the claw back provisions in Maguire's CSC stock option agreements.

The Court declines to address the parties' additional arguments, as it has previously ruled that Defendant waived his right to bring the affirmative defense that the punitive damages at issue here are unenforceable penalties.  The Court has no reason to address whether such damages would have been unenforceable penalties under Virginia law today.

> 3. *Motion* in Limine *to Exclude Evidence Related to CSC's Confidential Information or Customers*

Defendant's final motion *in limine* is to exclude evidence related to the theft, use, and disclosure of confidential information or solicitation of any of CSC's customers (the "Confidential Information and Customer Evidence").  Defendant argues that the claims associated with the Confidential Information and Customer Evidence were already

dismissed with prejudice and are, therefore, barred by the doctrine of claim preclusion.  (Def. Mem. in Supp. at 13.)  In addition, Defendant asserts that such evidence has no relevance to the remaining two claims and would be prejudicial to his defense.  (*Id.* at 12-13.)

Plaintiff urges the Court not to rule on this issue prematurely and clarifies that it has withdrawn most of the disputed exhibits, except for Exhibit 43.  (Pl. Mem. in Opp. at 14.)  CSC does not, however, provide any justification as to the potential relevance of the remaining exhibit.  (*Id.*)

The doctrine of claim preclusion forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Sturgell*, 553 U.S. at 892 (citing *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).  Plaintiff has already agreed to dismiss with prejudice its claims involving the Confidential Information and Customer Evidence.  It cannot now assert, without elaboration, that such evidence *may* be relevant at trial and, thus, the Court should wait to rule on the evidence until presented.  Since Plaintiff's counsel has chosen not to explain how this evidence might be relevant, the Court grants Defendant's motion.

## IV.   Conclusion

For the foregoing reasons, the Court rules as follows:

(1) Plaintiff's Motion *in Limine* to Exclude Evidence Involving Oral Conversations between Maguire and Two CSC Employees is **DENIED;**

(2) Plaintiff's Motion *in Limine* to Preclude Defendant from Asserting the Unenforceability of the Non-Solicitation Provisions as an Affirmative Defense is **GRANTED;**

(3) Plaintiff's Motion *in Limine* to Preclude Defendant From Asserting the Unenforceability of the Liquidated Damages Provisions in Maguire's Stock Option Agreements as Unenforceable Penalties is **GRANTED;**

(4) Plaintiff's Motion *in Limine* to Exclude the Deposition Testimony of Raj Mehta is **DENIED as moot;**

(5) Plaintiff's Motion *in Limine* to Exclude Testimony Regarding Whether Defendant Received the November 5, 2014 Offer Letter is **DENIED;**

(6) Plaintiff's Motion *in Limine* to Exclude Defendant's Motion and Threatened Motion for Rule 11 Sanctions is **DENIED as moot;**

(7) Plaintiff's Motion *in Limine* to Exclude Other Lawsuits is **DENIED as moot;**

(8) Defendant's Motion *in Limine* to Exclude Non-Solicitation Evidence Generally is **DENIED;**

(9) Defendant's Motion *in Limine* to Exclude Non-Solicitation

Evidence with Regards to Bill Hutton Specifically is

**GRANTED**;

(10) Defendant's Motion in Limine to Exclude Certain Damages

Evidence is **GRANTED**; *and*

(11) Defendant's Motion in Limine to Exclude Evidence Related

to CSC's Confidential Information or Customers is

**GRANTED.**

An appropriate Order will issue.

```
                        _____/s/_____
December 6, 2016              James C. Cacheris
Alexandria, Virginia    UNITED STATES DISTRICT COURT JUDGE
```